Give him a second. You may proceed. Good morning, Your Honors. Earl Silverstein on behalf of the appellant. Let me start off by indicating and debunking a myth that has been involved in this case from the get-go. This case, as filed in the Northern District, does not seek a return of trademarks or trade dress. What it is, it's a fraud case. It's a case based upon fraud in the inducement which motivated my client to execute a series of contracts. Negotiations took place in Grenada, Mississippi where the matter was filed. So it has nothing to do with trademarks. Granted that the trademark case is peripheral in this, but it is not at the heart of this case. This complaint is basically a fraud complaint. It is a sale of real estate which was personally owned by my client. There's no dispute that he personally owned that real estate. Thus he is standing because . . . What is your theory of injury in this case? What is your theory of injury in this case? A theory of injury is that based upon the fraud which was induced during those negotiations the sale of the real estate took place as the first transfer, the first contract that was executed. That then led to the bill of sale and the license agreement. Through those contracts my client lost his rights to the trademarks at Carrollton location and the trade dress at Carrollton location. The other matters . . . Isn't that the tie to the first case then? Doesn't that connect? Your own stated theory of injury, I get that it's a fraud claim, but your theory as to fraud damages sounds to me like it's based on the same issues that were litigated in the first case. Not based on the same issues, it's based on some of those facts, but not all of those facts. This case is based upon negotiations, intensive negotiations which took place on two separate days in Mississippi where the defendant and his counsel flew up to Grenada, Mississippi to negotiate. Had he been true in his statements there, had he lived up to the statements he made in those negotiations, we wouldn't be standing here today. But for the fraud that was perpetrated during those negotiations, my client would not have sold the real estate. The sale of the real estate was for one purpose only. That was so Mr. Coder could operate a Camellia Grill restaurant there. He didn't buy that real estate on South Carrollton Avenue to open up a flower shop or an ice cream store. He bought it to operate a Camellia Grill. So it was all a series of dominoes that had to fall. Without that fraud, had the fraud not been perpetrated, the theory of recovery is had the fraud not been perpetrated, my client would be in the position that he was prior to the negotiations. He would still own that property on South Carrollton unless he chose to sell it to someone else, but for the fraud. Now the issues on appeal that we present today are three. One, the transfer of venue by Judge Mills from the Northern District to the Eastern District of Louisiana. Two, the granting of the motion to dismiss under 12B-6 by Judge Malazzo, which was based upon lack of standing and res judicata. I would suggest to the court that on the transfer of venue, that is only allowed for the convenience of the parties and the witnesses and in the interest of justice. Counsel, Judge Mills makes that one statement. There's plenty else in his discussion and in the argument that is at least relevant evidence for transfer. Are you saying that one, he might say, stray remark somehow invalidates the whole transfer? Well, if you're talking about the stray remarks about the convenience of counsel? I think that was one time he said that, which makes me use the word stray, but you can tell me why that's an improper word. Well. But it does seem to me that he relied on a number of other factors and he was certainly correct that the convenience of other identified participants can be considered. Well, Judge Southwood, he did make that statement and he did rely upon some of the factors. He did not rely upon all of the factors. And it is required to discuss and evaluate all of the factors, the public interest factors and the private factors, and then weigh those. I would suggest to this court that if each of those factors was weighed, it would be a neutral scale, in which case venue transfer would not be appropriate. And let me back up a little bit on the venue issue. The burden of proof is on the party seeking the transfer. If you look at what Mr. Coder presented in his motion to change venue, it fell way short of the burden of proof that was required. He only addressed, this is Mr. Coder now, not Judge Miller, he only addressed the private concerns, never once addressed the public concerns. He said the Eastern District of Louisiana has addressed and is currently addressing the same issues raised by Schwartz. Well, first of all, fraud was never raised in any of the pleadings, whether in Louisiana State Court or in the Eastern District of Louisiana in the matters that were pending there at the time. Never once was fraud raised as an issue. So to say that those matters are currently pending is disingenuous. He also stated, Mr. Coder stated, he conducts no business in the Northern District of Mississippi. Well, obviously he conducted business. He flew to Grenada, Mississippi on two separate occasions to negotiate. That's conducting business. Even Judge Mills said that Mr. Coder left a large footprint in this district by chartering a private plane and negotiating contracts on two occasions. And then he finally says that Schwartz has chosen Louisiana Forums numerous times. Well, the times that Mr. Schwartz chose Louisiana Forums was based upon a forum clause which the parties contracted to in the license agreement. It clearly stated that this forum would be the state of Louisiana. So that's why that was chosen by Mr. Schwartz. Now Mr. Schwartz is living in Northern District of Mississippi. The negotiations took place in the Northern District of Mississippi. That's where he suffered his economic damages. Clearly, that's proper venue there. No one disputed that that was improper venue. So the burden then is on Mr. Coder. This is all Mr. Coder said. At that stage, Judge Mills should have dismissed the motion to transfer because he had not met his burden. The plaintiff not, I'm sorry, the moving party had not met his burden. But he didn't do that. Judge Mills picked up the reins and started discussing the various issues. So when he talks about what you just talked about, Judge Southwick, about the convenience of counsel, that is the same argument which led to a reversal in the Volkswagen case by this court. That is not one of the factors to be looked at. Yet he looked at that. That was considered to be an abuse of discretion that led to that reversal. Dealing with the public factors, there's no question but Mississippi law controls the complaint. So which court has greater familiarity with Mississippi law? The Mississippi court or the Louisiana court? I would suggest to you that that factor is clearly weighing against the transfer. Now, Judge Mills addressed that and says, well, yes, but Judge Malazzo has a greater knowledge of the facts. Facts does not equate to the law. The law, the factor is familiarity with the law, not familiarity with the facts. And he based that on the res judicata argument. Well, certainly Judge Mills was positioned where he could have read the briefing in Louisiana rather than requiring a new briefing on it if he wanted to do that and made that decision on res judicata. Yet he punted the matter back to Louisiana and I'm suggesting to the court that it was not within his discretionary power to do so. He talks about the remaining factors as being essentially neutral. One of those is the administrative difficulties, which he did not discuss at all. I would suggest that getting a trial date in the Northern District of Mississippi would certainly be easier and quicker than getting one in Louisiana, in the Eastern District of Louisiana. By way of example, this court issued a remand in March 2016 of a companion case. March 2018, we finally tried that. Two years. That's not expeditious in my view. And finally, the local interest factor clearly has to favor Mississippi. The people of the state of Mississippi have a vested interest in torts which occur in their jurisdiction upon their state. This clearly happened in Mississippi. Negotiations took place in Granada. No question about that. Mr. Schwartz is a domicile resident of Mississippi. Clearly, the state of Mississippi has a greater public interest than the argument being made, well, this involves the iconic Camellia Grill. We're not talking about the Camellia Grill. And the people of Louisiana don't care what happens to that because that's another case. We're talking about damages that occurred to Mr. Schwartz individually as a result of this fraud. Surely, Mississippi has to have a more greater interest in that. So if you take all these factors in the way, at best, it's neutral. Or at worst, it's neutral. At best, it favors Mississippi. So even in a neutral situation, transfers should not have been made. So I suggest that Judge Mills was not within his discretion and abused it by not considering all of the factors as he's required to do so and by considering the fact of which is not allowed, that being the convenience of counsel. Even if you talk about the expenses, why would it be more expensive for Mr. Schwartz and his counsel to come to Louisiana than it is for Mr. Coder and his counsel to come to Mississippi? And both parties had local counsel enrolled as well. Switching to the 12v6 motion, interestingly, Judge Mills found, quote, a plausible connection between the trips to Grenada and the claims asserted therein. That's in the record at 1061. In order to survive a 12v6 motion, we only have to simply show that there is a possible theory of recovery. Say it another way, that unless it's beyond doubt that there is no plausible theory of recovery for the plaintiff, then the 12v6 should not be granted. Paragraph 47 of the complaint indicates that Mr. Schwartz would not have transferred his assets had he been known the true intentions. One of those assets was his real estate. The real estate was personally sold. That's in the record in the complaint in paragraphs 14 and 19. Again, as I stated, without that real estate being sold, Mr. Coder had no use of that property for the committee of grill. He wasn't going to use it for any other purpose. The complaint for declaratory judgment filed by the Coder parties in the uptown case here in the Eastern District ties the real estate to the operation committee of grill in its language. And it says in there that Schwartz separately transferred the FF&E in connection with the bill of sale. So again, in their own complaint for declaratory judgment, they're bringing in Mr. Schwartz personally there, yet they're saying now he has no personal standing to bring this fraud claim. Well, obviously, he owns the real estate personally. By their pleading, he owns the FF&E that was transferred in the bill of sale. I would also suggest, as I did in briefing, that the issue of Mr. Schwartz being the beneficial owner, and I report those cases on dealing with the Internal Revenue Code, and granted they deal with tax issues, but there's nothing that says that they are restricted to tax issues. The cases in those say the person who has the power to dispose of income has the power. And that's what here. That's what the case here. He is the sole shareholder of the CGH. He's the individual director and a sole member. No one else could make those decisions except him. Won't you address race judicata and the time you have left? I'm sorry. What is the effect of that April decision? Certainly. Certainly. Race judicata does not apply because the case was still pending in Louisiana. Is there a final judgment, though, in that case? There was a final judgment, a partial final judgment, not a final judgment on the entire matter. That matter was remanded. It said we just tried it. The judgment was finally rendered in April of this year. Isn't that the final judgment, the one in April? I believe it is. Doesn't it completely resolve the matter? Subject to appeal. It is pending the appeal. Pending the appeal. Yes. But there's nothing further in the district court in that case? No. All right. Nothing further in the district court. So why isn't that sufficient to establish race judicata because it is a currently effective final judgment? Because it was not currently effective final judgment at the time the complaint in Mississippi was filed. In fact, in briefing, counsel refers to the matter as being pending in the Eastern District of Louisiana on four separate occasions. So it was not final at the time the complaint was filed. Nor was it final when this appeal was filed. It became final on, I believe it was April 18th of 2018. But not at the time the complaint was filed, so it couldn't have been race judicata. Secondly... Counsel, what I want you to do is tell us about secondly on rebuttal. Thank you, Judge. May it please the court. Good morning, Your Honors. Scott Henskins on behalf of the defendant Hasham Coder I have here in the courthouse with me, Danielle Burrell in my office, and John Litchfield, our co-counsel. It seems to me the most appropriate place to start is the transfer issue because that's what got us to the 12B6. The question there is whether Judge Mills abused his discretion, whether there was an appropriate finding of law, a conclusion... I'm sorry, a finding of fact, a conclusion of law, or a misapplication of the law to the facts that led to a patently erroneous decision. In this case, there is no argument that that is the case. If you look at Judge Mills' ruling, which is to me very clear, 17 pages on a transfer is pretty impressive, in my opinion. He goes through every single public and private interest factor as well as the interest of justice. Relative ease of access to the source of the proof, cost of attendance for witnesses, all of the practical problems that make the trial a case easy, expeditious, and inexpensive. The only one he missed in the private factors was availability of compulsory process to secure the attendance of witnesses. That one is the best one in our favor. Not a single witness in this case, other than Mr. Schwartz, has any relationship to Mississippi whatsoever. Every single one of them lives in the Eastern District of New Orleans, to our understanding. The court in New Orleans has subpoena power over those witnesses. The Mississippi court does not. It is almost 300 miles away from those people, and this case, if it was to proceed in Mississippi, could very well be a case just on depositions, which to me is unfair to all the parties, but particularly to my client, who is being sued. He also goes through the practical problems that associate with this case. Judge Mills was very particular about the res judicata issue. He mentioned it several times in the ruling and said there were particular problems. And the reason why this is important for the transfer case because he says that the best party or the best person to decide whether or not res judicata would apply to these issues is the judge who tried the case to begin with. The judge who had it for years and years. Not him. Could he do it? Sure. But he would have to spend a bunch of time and resources to catch up to where Judge Malazzo was. Interestingly enough, that is supported by a case law that we cited in our brief, the Mountain West Mine case. In there, in there, the court made a comment that res judicata, if it's an issue in the case, is best determined by the judge that had the case first. That is the case here and very strong factor in our favor. The public interest factors, the administrative difficulties flowing from the court congestion, local interest and having localized interest decided at home, those were, as Judge Mills says, essentially neutral. I believe they cut in our favor and I'm happy to go through them. But the one that, the factor that I believe was really important for that is the familiarity of the form with the law that governs cases. That's the one that they, they pound on so much. That Mississippi law is so important to this case and a Mississippi judge must interpret it. Again, the Mountain West Mines case says when the question of state law is not complex, the factor should be given little or no weight. These issues are fraud, conversion, misrepresentation, things of that sort. Very simple concepts of law that even a first year law student can understand. These are not complex concepts of law that you have to have a Mississippi lawyer get through or a Mississippi judge. So there's, the public interest factors clearly weigh in the favor of transfer. But where... Do you agree that, excuse me, Counselor, do you agree that Mississippi law does apply to, would have applied to this dispute? Your Honor, based on everything that's happened in the case, I would agree that Mississippi law would apply. I don't need you to belabor that. I just want to make sure that you are acknowledging that. The interest of justice factor. That is a factor that the courts must determine in determining whether or not transfer is appropriate under 1404. This is where Judge Mills really found his steam. In the interest of justice in his mind, the overriding concern is to make sure the case is decided correctly. Again, he says that he could catch up, but it would be a considerable expense in relation to Judge Malazzo. Judge Malazzo had this case for almost a decade. Eight years, I believe, that she had this case, or at least five. She knew every detail about this case that he doesn't. That is, that is extremely important. Secondly, Judge Mills questions whether or not plaintiff is really doing what is patently obvious to me in this case, is trying to find a different forum. He's lost in the Eastern District on multiple occasions. He files this lawsuit, coincidentally, in another forum, hoping to find a better judge that might be sympathetic to his cause. That is inappropriate forum shopping that I think Judge Malazzo sniffed out and was a major reason why in the interest of justice this case should have been transferred. Now, we cite some additional cases. The first filed rule is very important. The Fifth Circuit is adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. This is the first filed case in my estimation. The doctrine should apply here. Again, the parties litigated the issues surrounding these facts for years. The fact that they filed a later filed action in Mississippi should be subject to that rule and it should be transferred. When do you say the cause of action for fraud accrued? Judge, I say so we have a substantial difference of opinion over that. I'm aware of that. If a fraud existed, I think it's at the meeting that they describe in Mississippi or at best at the confection of the contracts. What they try to suggest in their briefs is that when the contracts were executed at the very latest, that's when. What they try to argue is that it really didn't ripen until Judge Malazzo ruled. That, to me, is putting the cart after the horse. That makes no sense to me. The action happened. If there was a fraud, it happened. We don't need a court to tell us that it was fraud or that a bad thing  or that there was a particular case. Now, why is that important? Even under their theory, they had plenty of opportunities to file a lawsuit in the Eastern District. In their own petition, they claimed that August 2013 was the first time that the coder parties suggested that the bill of sales should be used for something other than in relation to the license agreement. In December of 2013, we filed a declaratory judgment action in the Eastern District using the bill of sales as the clear and unambiguous contract that shows that we obtained, our clients obtained, the ownership of the license  and we didn't bring up fraud. There was no affirmative defense that fraud was somehow an impediment to the contract. A couple years later, Judge Malazzo rules on July 10th 2015 that the contracts are clear and unambiguous and that transfer was case. Five days later, they sued us again. Five days later on July 15th they sued us again in the CDC here in New Orleans. Never mentioned fraud. If the case ripened at the ruling, they still had multiple opportunities to do something and they didn't. Rather, after this court affirmed that decision, our victory, they file in another forum in Mississippi. That, to me, is the quintessential example of forum shopping and it shouldn't be allowed in this case. So, there is no question in my mind that Judge Mills was right on the money in his ruling, that there is no abuse of discretion here, that there is no argument that the Mississippi court is a more convenient forum for this case and transfer should be allowed. Now, regardless of the transfer issue, because when it comes down to these substantive issues, the standing issue, this is a justiciability issue, this is not just a pleading issue, did he say it right in his pleadings, this is an indispensable part of his case. He has to show an injury in fact, a concrete and particularized injury in fact. Him personally, not the court, but his complaint. Count one, common law fraud. Coder's actions described above constitute common law fraud perpetrated as a continuing scheme to defraud Schwartz of his ownership of the marks in question. He never owned those marks, not for a day in his life, not one time. In 1999 they were transferred to commedia grill holdings Inc. Every minute they existed before that they were owned by commedia grill Inc. Not one time did he ever own those. Count two, unjust enrichment. Equity requires that Coder pay Schwartz for the reasonable use of the marks. He never knowingly made false material representations that the bill of sale did not permanently transfer ownership of the marks. That's paraphrased. The same language is present in negligent misrepresentation claim. And in the damages section, he says by reason of Coder's fraudulent actions, devaluation of Schwartz's potential use of the marks and the value of the brand. I didn't make this up. He wrote it down in multiple occasions. 73 times. At least 73 times in this complaint the term mark or trademarks was used in 88 paragraphs. Remind me, what relief does he seek? Well, he doesn't seek a repatriation of the trademarks. What he wants to do is be made whole. He wants to be paid more for the marks that he lost. He's not seeking cancellation of the sale. He's not seeking a repatriation of the mark. He's seeking a repatriation   And he doesn't   repatriation of the trademarks. He's not seeking a repatriation of the mark. He's not seeking a repatriation of the trademarks.  not seeking a repatriation of the trademark. Pros Р e r e . We have to go back and challenge this thing. After multiple attempts to plead these things we will go backwards and allow that. That seems like we have to go back and challenge this thing. We have to go back and challenge this thing. That seems like we They confirm that they are going to do this in a different way. This is a different way. They are going to in a different way. They are going to do this in a different way. They are going to do this  a different way. They are going to do  in a different way.